UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

AMY HEDGES,

       Plaintiff,

v.                                       Case No. 2:19-cv-833-FtM-MAP

COMMISSIONER OF SOCIAL SECURITY,

       Defendant.

_____/

## ORDER

       This is an appeal of the administrative denial of supplemental security income (SSI) and disability insurance benefits (DIB).[1]  *See* 42 U.S.C. §§ 405(g), 1383(c)(3).  Plaintiff argues her case should be remanded to the Commissioner under sentence four of 42 U.S.C. § 405(g) for seven reasons (two of which I discuss together):  (1) the administrative law judge (ALJ) erred in excluding from her RFC limitations related to her use of her hands; (2) there are apparent inconsistencies between the Dictionary of Occupational Titles (DOT) and the vocational expert's (VE) testimony; (3) the ALJ posed an incomplete hypothetical question to the VE; (4) the ALJ erred in finding she could perform jobs with a specific vocational preparation (SVP) level of two and three; (5) Plaintiff waived her statutory right to counsel while "under stress to make an immediate decision" (doc. 27 at 53); (6) the ALJ did not fully develop the record; and (7) Plaintiff was denied her right to a hearing by a constitutionally-appointed ALJ.  After considering Plaintiff's arguments, Defendant's response, and the

---

[1]  The parties have consented to my jurisdiction under 28 U.S.C. § 636(c).

administrative record (docs. 15, 27), I find substantial evidence supports the ALJ's decision that Plaintiff is not disabled.  I affirm.

A.  *Background*

Plaintiff Amy Hedges was born on February 25, 1974, and was 41 years old on her alleged onset date of February 28, 2015. (R. 36)  After graduating from high school, she trained with the Mississippi Gaming Commission in Biloxi, Mississippi to be a casino dealer. (R. 53)  She testified she never worked as a casino dealer but was a line cook and a waitress at a restaurant and a housekeeper and office worker for a vacation rental company.  The ALJ determined that these jobs did not qualify as past relevant work. (R. 36, 53-54)

Plaintiff alleges disability due to rheumatoid arthritis, foot and ankle issues, hernias, bipolar disorder, and anxiety. (R. 57-63)  She contends she has been unable to work since February 2015, when she had a complicated hernia surgery.  In her words, "on my way to do the pre-op registration I was in a car accident … So, they rescheduled my surgery for six days later, after making sure I didn't have concussions or anything like that.  I went in for surgery, and they dropped me off the operating table." (R. 54)  She explained when she woke up after the surgery, she had an "an orbital fracture, a deviated septum, a concussion that they had to monitor me in the hospital for." (*Id.*)  After five days in the hospital, she was discharged.

Plaintiff has foot issues and a "carbon fiber insert that, like, substitutes for my big toe because my bunion and toes have completely turned – on my right foot everything is turned to the right, and on my left foot everything is turned to the left." (R. 57)  She can only wear sneakers with her insert and has trouble standing and walking for longer than 20 minutes at a time.  In early 2018 (after her onset date), Plaintiff's rheumatologist diagnosed her with arthritis, which impacts "my hands the most, my shoulders, my neck, my knees, elbows – I

mean, every joint.  Anywhere and everywhere I bend.  My hands were getting really, really hard to use." (R. 61)  She used to write poetry but has a hard time sitting and writing now. (R. 61-62)  She sees a psychiatrist twice a month for treatment of bipolar and anxiety. (R. 63-64)

Plaintiff lives in a house with her long-time boyfriend, their minor son, and her adult daughter.  She grocery shops and drives short distances (because her "hands lock up," R. 64). She attends her son's band concerts and participates in his summer camp activities as she is able. (R. 59, 67)  Function reports indicate she meets up with friends about once a week and plays board games and cards as a hobby. (R. 227)  But her mental health issues make it a struggle to leave the house.  She testified that "the older I get, the more I hate people." (R. 64) She has a short fuse with strangers (when she was waiting tables, "I was getting rude with customers . . . that was starting to be an issue." R. 69), and her psychiatrist suggested she get out of the house more often, so this trait does not get worse. (R. 68)  This strategy appears to have helped.  Her angry outbursts have lessened:  "[F]ive years ago I could have walked into Walmart, seen a four or five year old with a ninny in their mouth, and I'd walk up to the parent and say, 'What the hell are you doing letting your child have a ninny in his mouth, isn't he too old?'" (R. 69)  But she has learned to "walk away from confrontation." (*Id.*)

Plaintiff appeared *pro se* at her March 28, 2018 administrative hearing.  After the ALJ explained her right to representation, Plaintiff signed a waiver of representation and said she wanted to proceed with the hearing that day. (R. 48-49)  In her written decision issued after the hearing, the ALJ found Plaintiff has the severe impairments of "history of hernial ventral repair, degenerative disc disease of the spine, right hallux valgus, chronic pain syndrome, polyarthropathy, fibromyalgia syndrome, attention deficit disorder, bipolar disorder, and

anxiety."[2] (R. 26)  Aided by the testimony of a vocational expert (VE), the ALJ determined

Plaintiff is not disabled as she has the RFC to perform sedentary work:

> Except occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; occasionally balance, stoop, kneel, crouch, and crawl; occasional exposure to extreme heat and humidity, vibration, and hazards such as moving mechanical parts, of equipment, tools, and machinery; can understand, carry out, and remember simple instructions in two hour increments sufficiently enough to complete an eight-hour work day in an environment that does not involve fixed production quotas; only occasional changes in the work setting; and occasional interaction with the general public.

(R. 28)  Based on the VE's testimony, the ALJ found that, with this RFC, Plaintiff could work

as a charge account clerk, a clerical assistant, or an escort driver. (R. 37) After the ALJ's

decision, Plaintiff obtained counsel, who obtained updated medical records and challenged

the VE's testimony, among other things, in a letter to the Commissioner and requested the

Appeals Council review the ALJ's decision. (R. 283-90)  The Appeals Council denied review.

(R. 1-6)  Plaintiff, having exhausted her administrative remedies, filed this action (doc. 1).

B.  *Standard of Review*

To be entitled to DIB and/or SSI, a claimant must be unable to engage "in any

substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to result in death or which has lasted or can be expected

to last for a continuous period of not less than 12 months."  *See* 42 U.S.C. §§ 423(d)(1)(A),

1382c(a)(3)(A).  A "'physical or mental impairment' is an impairment that results from

anatomical, physiological, or psychological abnormalities which are demonstrable by

---

[2]  Plaintiff's date last insured (DLI) for DIB purposes was June 30, 2019. (R. 26) For DIB claims, a claimant is eligible for benefits if she demonstrates disability on or before her DLI. 42 U.S.C. § 423(a)(1)(A).  Because Plaintiff's amended DLI is June 30, 2019, she must show she was disabled on or before that date.  *See Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).

medically acceptable clinical and laboratory diagnostic techniques." *See* 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Social Security Administration, to regularize the adjudicative process, promulgated detailed regulations that are currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). Under this process, the Commissioner must determine, in sequence, the following: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment(s) (*i.e.*, one that significantly limits her ability to perform work-related functions); (3) whether the severe impairment meets or equals the medical criteria of Appendix 1, 20 C.F.R. Part 404, Subpart P; (4) considering the Commissioner's determination of claimant's RFC, whether the claimant can perform her past relevant work; and (5) if the claimant cannot perform the tasks required of her prior work, the ALJ must decide if the claimant can do other work in the national economy in view of her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). A claimant is entitled to benefits only if unable to perform other work. *See Bowen v. Yuckert*, 482 U.S. 137, 142 (1987); 20 C.F.R. § 404.1520(f), (g); 20 C.F.R. § 416.920(f), (g).

In reviewing the ALJ's findings, this Court must ask if substantial evidence supports those findings. *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The ALJ's factual findings are conclusive if "substantial evidence consisting of relevant evidence as a reasonable person would accept as adequate to support a conclusion exists." *Keeton v. Dep't of Health and Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citation and quotations

omitted).  The Court may not reweigh the evidence or substitute its own judgment for that of the ALJ even if it finds the evidence preponderates against the ALJ's decision.  *See Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).  The Commissioner's "failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining the proper legal analysis has been conducted mandates reversal."  *Keeton*, 21 F.3d at 1066 (citations omitted).

    C.  *Analysis*

    As an initial matter, the Court notes that Plaintiff alleges (in a 77-page joint memorandum) that the ALJ committed seven errors.  This inability to pare down the issues reflects poorly on the strength of her arguments. *See, e.g., McMahon v. Comm'r of Soc. Sec.*, No. 8:12–cv–2746–T–30TGW, 2013 WL 6116828, at *3 (M.D. Fla. Nov. 20, 2013) ("The plaintiff attacks the law judge's decision on nine grounds. It is unreasonable to think that the law judge is so incompetent that she committed reversible error nine times. Rather, the assertion of nine issues reflects poorly on plaintiff's counsel who did not make the effort to winnow the frivolous claims from the unmeritorious ones.") *aff'd sub. nom.*, 583 F. App'x 886 (11th Cir.2014); *Vue v. Comm'r of Soc. Sec.*, No. 8:13-CV-3128-T-30EAJ, 2015 WL 631383, at *2 (M.D. Fla. Feb. 13, 2015) (same).

    I also reiterate that, when reviewing an ALJ's decision, my job is to determine whether the administrative record contains enough evidence to support the ALJ's factual findings.  *See* 42 U.S.C. § 405(g); *Biestek v. Berryhill*, ___ U.S. ___; 139 S.Ct. 1148, 1154 (2019).  "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high."  *Id.*  In other words, I am not permitted to reweigh the evidence or substitute my own judgment for that of the ALJ even if I find the evidence preponderates

against the ALJ's decision.  *See Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

Considering this, I discuss each of Plaintiff's arguments below and find that none warrants

remand.

### 1.  *Plaintiff's hand impairments*

Plaintiff's first argument is that the ALJ erred because Plaintiff's RFC does not include

limitations related to the use of her hands (doc. 27 at 24-27).   The Commissioner counters

that Plaintiff is asking the Court to re-weigh the evidence and that substantial evidence

supports the ALJ's finding that Plaintiff can perform sedentary work with no manipulative

limitations (beyond the weight restrictions inherent in sedentary work) (*Id.* at 27-29).  I agree

with the Commissioner.

A claimant's RFC is the most work she can do despite any limitations caused by her

impairments. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).  In formulating a claimant's RFC,

the ALJ must consider all impairments and the extent to which they are consistent with

medical evidence.   20 C.F.R. §§ 404.1545(a)(2), (e); 416.945(a)(2), (e).   An ALJ may not

arbitrarily reject or ignore uncontroverted medical evidence.  *McCruter v.  Bowen,* 791 F.2d

1544, 1548 (11th Cir. 1986) (administrative review must be of the entire record; accordingly,

ALJ cannot point to evidence that supports the decision but disregard other contrary

evidence).   A claimant's RFC is a formulation reserved for the ALJ, who, of course, must

support his findings with substantial evidence.   *See* 20 C.F.R. §§ 404.1546(c), 416.946(c);

*Beegle v. Soc. Sec. Admin., Comm'r*, 482 F. App'x 483, 486 (11th Cir. 2012) ("A claimant's

residual functional capacity is a matter reserved for the ALJ's determination, and while a

physician's opinion on the matter will be considered, it is not dispositive."); *Cooper v. Astrue*,

373 F. App'x 961, 962 (11th Cir. 2010) (the assessment of a claimant's RFC and corresponding limitations are "within the province of the ALJ, not a doctor.").

After including polyarthropathy, chronic pain syndrome, and fibromyalgia among Plaintiff's severe impairments, the ALJ found Plaintiff capable of sedentary work with no limitations on her ability to handle or finger. (R. 28)  In fashioning Plaintiff's RFC, the ALJ reviewed the medical records of rheumatologist Vedashree Panthulu, M.D. of Highlands Advanced Rheumatology and Arthritis Center, who began treating Plaintiff in December 2017, for diffuse body pain, joint pain, and associated swelling. (R. 31, 872-98)  Plaintiff told Dr. Panthulu that she had joint pain in her neck, hips, knees, wrists, ankles, shoulders, and hands and said her fingers swell.  Plaintiff also testified at her administrative hearing that she cannot drive long distances without her hands locking up. (R. 64)

Substantial evidence supports the ALJ's decision to exclude hand limitations from Plaintiff's RFC.  First, in function reports submitted to the agency as a part of her application, Plaintiff, her husband, and her mother left unchecked the box denoting that Plaintiff's impairments impact the use of her hands. (R. 219, 228, 236)  Additionally, Plaintiff reported to Dr. Panthulu that her joint pain and swelling were 20 to 40% better with medication. (R. 873, 877, 883-34)  A December 2017 ultrasound of her left hand was normal. (R. 889)  After a cortisone injection and a course of Prednisone, Plaintiff reported in late December 2017, that she had 50% improvement in the swelling of her MCP joints and 20% improvement in her overall pain. (R. 876-78)   Dr. Panthulu prescribed a tapering dose of Prednisone, counseled her to quit smoking to help with her arthritis pain, and noted that he was unsure if Plaintiff had degenerative joint disease "vs fibromyalgia vs inflammatory polyarthropathy." (R. 878, 886)  In January 2018, Plaintiff reported some pain in her bilateral palms and pointer

fingers, and Dr. Panthulu noted that Prednisone helped with her swelling and joint pain. (R. 881, 886)  Plaintiff's rheumatoid arthritis factor was negative.  I find the ALJ did not err in excluding handling and fingering limitations in Plaintiff's RFC.

### 2. VE vs. DOT

Next, Plaintiff argues the ALJ erred in failing to identify and resolve an apparent conflict between the VE's testimony and the DOT.[3]  Plaintiff's RFC limited her to jobs that require occasional interaction with the public and the ability to understand, remember, and carry out simple instructions. (R. 28)  Plaintiff argues this is inconsistent with the three jobs the VE identified, which (according to the DOT) require a GED reasoning level of two or three.   The Commissioner counters that the jobs the VE identified are consistent with Plaintiff's RFC, and there is no apparent conflict with the DOT.

Social Security Ruling 00-4p requires the ALJ to "identify and obtain a reasonable explanation for any conflicts between occupational evidence provided by [the VE] . . . and information in the [DOT]."  SSR 00-4p.  The ruling provides:

> When there is an apparent unresolved conflict between VE . . . and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE . . . to support a determination or decision about whether the claimant is disabled.  At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency.  Neither the DOT nor the VE . . . automatically "trumps" when there is a conflict.  The adjudicator must resolve the conflict by determining if the explanation given by the VE . . . is reasonable and provides a basis for relying on the VE . . . testimony rather than on the DOT information.

SSR 00-4p.

---

[3] The DOT is "an extensive compendium of data about the various jobs that exist in the United States economy, and includes information about the nature of each type of job and what skills or abilities they require."  *Washington v. Comm'r of Soc. Sec.,* 906 F.3d 1353, 1357 n.2 (11th Cir. 2018).

In arguing the Commissioner did not follow this ruling, Plaintiff relies on the Eleventh Circuit's decision in *Washington v. Commissioner of Social Security,* 906 F.3d 1353 (11th Cir. 2018) (doc. 27 at 32). In *Washington*, the Eleventh Circuit held that an ALJ has an affirmative duty to (1) identify any apparent conflicts between a VE's testimony and the DOT, (2) ask the VE about the conflict, and (3) explain the resolution of the conflict in the decision. *Id.* at 1353-54.

Under *Washington*, the issue is not whether there *is* a conflict between limitations included in the claimant's RFC and jobs the ALJ identifies as falling within that RFC based on the DOT. Rather, the issue is whether there is an *apparent* conflict between those two. And the Eleventh Circuit in *Washington* broadly defined that term:

> An "apparent conflict" is thus more than just a conflict that is made apparent by the express testimony of the VE. It is a conflict that is reasonably ascertainable or evident from a review of the DOT and the VE's testimony. At a minimum, a conflict is apparent if a reasonable comparison of the DOT with the VE's testimony suggests that there is a discrepancy, even if, after further investigation, that turns out not to be the case.

*Id.* at 1365.

The court also stated, "apparent should be taken to mean apparent to an ALJ who has ready access to and a close familiarity with the DOT. Put another way, if a conflict is reasonably ascertainable or evident, the ALJ is required to identify it, ask about it, and resolve it in his opinion. We take the word 'apparent' to mean 'seeming real or true, but not necessarily so.'" *Id.* at 1366. Per *Washington,* ALJs may not simply rely on a VE's statement that his testimony does not conflict with the DOT. *Washington,* at 1361. Rather, "[Social Security Ruling] SSR 00-4p imposes an independent, affirmative obligation on the part of the ALJ to undertake a meaningful effort to uncover apparent conflicts, beyond merely asking the VE if there is one." *Id.* at 1364.

The Eleventh Circuit has not addressed in a published decision the issue of what threshold reasoning level is *per se* inconsistent with simple, routine, and repetitive work, and the landscape of cases interpreting *Washington* is continuously shifting.[4]   In the post-*Washington* decision *Wooten v. Commissioner of Social Security*, 787 F. App'x 671 (11th Cir. 2019), an unpublished, *per curiam* decision, the Eleventh Circuit stated, "this Court has not yet decided in a published opinion whether a limitation to simple, routine, repetitive work is inconsistent with a job that requires a general education development reasoning level of three." The *Wooten* Court decided it "need not resolve that question" because one of the three jobs identified by the ALJ was the job of final assembler with a reasoning level of one, the lowest level, which was consistent with the plaintiff's RFC; even if the ALJ had erred in identifying two jobs that required a reasoning level of three that apparently conflicted with the RFC, the error was harmless.[5]   *Id.* at 674.   Other courts are consistent with this.   *See Peterson v. Comm'r of Soc. Sec.*, No. 2:19-cv-566-FtM-29NPM, 2020 WL 6708022 (M.D. Fla. Nov. 16, 2020) (finding ALJ's failure to resolve apparent conflict between VE testimony and DOT harmless where VE identified other jobs that existed in significant numbers in national

---

[4] According to Eleventh Circuit Rule 36-2, "unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority."   11th Cir. R. 36-2; *see Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 n.1 (11th Cir. 2015) (per curiam) ("Cases printed in the Federal Appendix are cited as persuasive authority.").   The Eleventh Circuit's Internal Operating Procedures offers this: "Opinions that the panel believes to have no precedential value are not published.   Although unpublished opinions may be cited as persuasive authority, they are not considered binding precedent."   11th Cir. R. 36-2, I.O.P. 6.

[5] An SVP rating is the time it takes to learn to do a job.   Unskilled work corresponds to an SVP rating of 1 or 2, while an SVP rating of 3 corresponds to semi-skilled work.   GED reasoning levels, on the other hand, range from 1 to 6 and measure a claimant's ability to engage in certain basic functions related to education and require the claimant to be capable of carrying out instructions and performing mental tasks.   DOT, App'x C (4th ed. 1991), 1991 WL 688702.

economy that plaintiff could perform); *Zeh v. Saul*, No. 8:18-cv-1608-T-SPF, 2019 WL 4233765, *3 (M.D. Fla. Sept. 6, 2019) (same).

Applying *Washington*, I have held that there is an apparent conflict when an ALJ's hypothetical question limits a claimant to simple work and the VE names jobs with reasoning levels of two or three. *Daniel v. Comm'r of Soc. Sec.*, No. 5:19-cv-83-Oc-MAP, 2020 WL 1485900 (M.D. Fla. Mar. 27, 2020); *Breiding v. Comm'r of Soc. Sec.*, 6:19-cv-689-Orl-MAP, Doc. 18 (Apr. 20, 2020). In so holding, I was following other courts within the circuit. *See generally Nadile v. Saul*, No. 8:19-cv-9-T-CPT, 2020 WL 1430701 (M.D. Fla. Mar. 24, 2020); *Congdon v. Saul*, No. 8:19-cv-274-T-SPF, 2019 WL 563538 (M.D. Fla. Feb. 5, 2020); *Saffioti v. Comm'r of Soc. Se*c., No. 2:17-cv-143-FtM-29CM, 2019 WL 1513354, at *3 (M.D. Fla. Apr. 9, 2019); *Borroto v. Comm'r of Soc. Sec.*, No. 2:17-cv-673-FtM-99CM, 2019 WL 488327, at *9- 10 (M.D. Fla. Jan. 8, 2019), report and recommendation adopted, 2019 WL 290599 (Jan. 23, 2019); *Salermo v. Saul,* No. 8:18-cv-979-T-TGW, 2019 WL 4595157, at *3 (M.D. Fla. Sept. 19, 2019) (recognizing Eleventh Circuit's broad definition of term "apparent" in *Washington* and explaining "[t]he DOT states that, unlike reasoning level 1, reasoning level 2 requires the ability to carry out detailed instructions. That appears to be inconsistent with simple work.").

More recently, in *Valdez v. Commissioner of Social Security*, 808 F. App'x 1005 (11th Cir. 2020), another unpublished, *per curiam* decision, the Eleventh Circuit stated:

> We haven't decided the issue Valdez raises here – whether a limitation to simple, routine, and repetitive work is inconsistent with a job that requires a reasoning level of three. But it is unnecessary to decide it because, even if Valdez was not able to work as an order clerk, the ALJ still concluded that he could perform two other jobs: lens inserter, which has a reasoning level of one, and lens-block gauger, which has a reasoning level of two. Valdez has not argued that these jobs are inconsistent with his residual functional capacity, and they are not.

*Id.* at 1009.  As an unpublished decision, *Valdez* is not binding on this Court.  But since its issuance, the majority of courts in this circuit have relied on *Valdez* to bolster their findings that a reasoning level two job is not inconsistent with simple, routine, and repetitive work. *James v. Comm'r of Soc. Sec.*, No. 2:19-cv-869-FtM-MRM, 2021 WL 973498, at *10 (M.D. Fla. Mar. 16, 2021) (relying on *Valdez* and finding reasoning level two job not inconsistent with simple, routine, repetitive work); *Franasiak v. Comm'r of Soc. Sec.*, No. 3:19-cv-1378, 2021 WL 1050138, at *7 (M.D. Fla. Mar. 19, 2021) (same); *Reyes v. Comm'r of Soc. Sec.*, No. 2:19-cv-866-JLB-NPM, 2021 WL 1085618, at * (Mar. 22, 2021) (same); *Fletcher v. Saul*, No. 8:19-cv-1476-T-23AAS, 2020 WL 4188210, at *1 (M.D. Fla. July 21, 2020) (overruling plaintiff's objections to magistrate judge's report and recommendation and finding that what "constitutes the holding in *Valdez*" is that reasoning level of two is not inconsistent with simple, routine, repetitive tasks); *Green v. Saul*, No. 8:19-cv-2021-T-TGW, 2020 WL 5743185, at *10 (M.D. Fla. Sept. 25, 2020) (finding that the Eleventh Circuit's decision in *Valdez*, as construed by *Fletcher*, "provided sufficient clarification to permit the conclusion that there is no conflict between a limitation to simple, routine, repetitive tasks and jobs that require reasoning level 2."); *Yvonne M. v. Comm'r of Soc. Sec.*, No. 1:18-cv-4389-SDG, 2020 WL 5810143, *11-12 (N.D. Ga. Sept. 30, 2020) (sustaining Commissioner's objections to report and recommendation and finding that a limitation to simple, routine, and repetitive work did not create an apparent conflict with jobs in the DOT having a reasoning level of two).

Although I have characterized *Valdez*'s statement that jobs with reasoning levels of one and two are not inconsistent with a limitation to simple, routine, and repetitive work as dicta, this was in the context of denying the Commissioner's motion to alter or amend a judgment that was issued two days before the *Valdez* decision.  *Breiding v. Comm'r of Soc. Sec.*, 6:19-cv-

689-Orl-MAP, Doc. 22 (June 18, 2020); *see also Poland v. Comm'r of Soc. Sec.*, 6:19-cv-1363-Orl-GJK, 2020 WL 3073772, at *3 (M.D. Fla. June 10, 2020) (the Eleventh Circuit's statement in *Valdez* "that a reasoning level of two is not inconsistent with a limitation to simple, routine, and repetitive work is dicta and hence not controlling here.").

In a similar case to this one decided one month before *Valdez*, *Pierce v. Commissioner of Social Security*, the court rejected the plaintiff's argument that jobs with a reasoning level of one and two and an SVP of two were inconsistent with the RFC for simple tasks. No. 8:18-cv-3114-T-JSS, 2020 WL 995850, at *4 (M.D. Fla. Mar. 2, 2020). The *Pierce* court pointed out that "courts have concluded that 'the requirement of Reasoning Level 2 or 3 is not inconsistent with the ability to perform only simple tasks,' as long as those jobs have a [SVP] time of 2." *Id.* at 5 (quoting *Chambers v. Comm'r of Soc. Sec.*, 662 F. App'x 869, 873 (11th Cir. 2016)); *see also Miller v. Comm'r of Soc. Sec.*, 246 F. App'x 660, 661-62 (11th Cir. 2007); *Hobbs v. Colvin*, No. 8:13-cv-3233-T-24MAP, 2015 WL 628763, at *5 (M.D. Fla. Feb. 12, 2015); *Gray v. Colvin*, No. 3:12-cv-506/EMT, 2014 WL 1118105, at *8 (N.D. Fla. Mar. 20, 2014); *Hurtado v. Astrue*, No. 09-60930-CIV, 2010 WL 1850261, at *12 (S.D. Fla. Apr. 14, 2010).

Further complicating matters, this case has an added twist: can a limitation to simple, routine, and repetitive work (a much-scrutinized RFC limitation post-*Washington*) be analogized to the less discussed limitation to understanding, remembering, and carrying out simple instructions? Considering the cases collected above, I find that it can. Here, the ALJ asked the VE the following hypothetical question:

> We have a younger individual with at least a high school education. That individual would be able to perform sedentary work. That individual would also be able to occasionally climb ramps and stairs, never climb ladders, ropes, and scaffolds; occasionally balance, stoop, kneel, and crouch; only occasional exposure to extreme heat and humidity, as well as vibration with the occasional – only occasional exposure to vibration, as I indicated, as well as hazards such

> as moving mechanical parts of equipment, tools, and machinery; *can understand, carry out, and remember simple instructions* in two-hour increments sufficient enough to complete an eight-hour workday in an environment that does not involve fixed production quotas, and only occasional changes in the work setting with occasional interaction with the general public. Would that individual be able to perform work in the national economy?

(R. 71) (emphasis added)  The VE asked, "[t]he interaction with the public, would that be – include telephonic, or be face to face only?" (*Id.*)  The ALJ clarified that the limitation included telephonic interaction, too. (R. 72)  The VE answered that such a hypothetical individual could work as a charge account clerk (51,000 jobs nationally, GED reasoning level 3, SVP level 2), a clerical assistant (150,000 jobs nationally, GED reasoning level 2, SVP 2), and an escort driver (25,000 jobs nationally, GED reasoning level 2, SVP level 3). (*Id.*)  *See* DOT § 205.367-014, 1991 WL 671715; DOT § 209.587-010, 1991 WL 671797; DOT § 919.663-022, 1991 WL 687886.  When the ALJ narrowed the hypothetical to include three or more absences per month, this eliminated all jobs.[6] (*Id.*)  The ALJ asked:  "And is your testimony consistent with the Dictionary of Occupational Titles?" (*Id.*)  The VE responded that it is, "with the exception of the issue of absenteeism, only because the DOT does not address that issue, and I therefore relied upon my 30 years of experience for that information." (*Id.*)

Considering the post-*Valdez* persuasive authority, I find there is no apparent conflict under the circumstances of this case, because the VE identified at least one job (clerical assistant) that is a both a GED reasoning level of two and an SVP level of two.  A clerical

---

[6] The ALJ necessarily rejected the notion that Plaintiff required a specific number of absences from work, as the second hypothetical posits, because the ALJ's final RFC did not include a limitation for absences.  Plaintiff does not argue the RFC's failure to include this limitation was error.  Neither does she argue the ALJ's first hypothetical question was inaccurate for failure to include this limitation.

assistant is a reasoning level two job, which the DOT says requires a worker to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few variables in or from standardized situations." DOT § 209.587-010, 1991 WL 671797. Additionally, the clerical assistant job requires an SVP of two, which corresponds to the definition of unskilled work, *i.e.* work that involves "little or no judgment to do simple duties." 20 C.F.R. §§ 404.1568(a), 916.968(a). As such, I find there is no apparent conflict between the VE's testimony and the DOT. *Cf. Korstanje v. Comm'r of Soc. Sec.*, No. 19-cv-3003-T-MAP, 2021 WL 129822, at *6 (M.D. Fla. Jan. 14, 2021) (finding no need to decide exact glass *Valdez* places on *Washington*, because ALJ identified one job that was reasoning level of one and SVP of two). The VE's testimony constituted substantial evidence on which the ALJ properly relied in finding that Plaintiff could perform other jobs in the national economy and concluding that Plaintiff is not disabled.

### 3. *Hypothetical posed to the VE*

Third, in a half-page argument, Plaintiff asserts that the ALJ erred by failing to include limits on crawling in the hypothetical question posed to the VE, because her RFC limits her to only occasional crawling (doc. 27 at 41). It is undisputed that an ALJ must pose an accurate hypothetical that accounts for all the claimant's impairments. *Wind v. Barnhart,* 133 F. App'x 684, 694 (11th Cir. 2005); *Pendley v. Heckler,* 767 F.2d 1561, 1563 (11th Cir. 1985). The ALJ's hypothetical must also comprehensively describe the plaintiff's limitations. *Pendley,* 77 F.2d at 1563. But the hypothetical does not need to include "each and every symptom of the claimant." *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1270 (11th Cir. 2007).

Plaintiff is correct that the two hypothetical questions the ALJ posed to the VE do not include occasional crawling and that her RFC does provide for this limitation. (R. 28, 71-72)

This is harmless error. *See Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983) (remand unnecessary when it would be a waste of judicial resources and would not change the administrative result). The jobs the VE identified as within Plaintiff's RFC – charge account clerk, clerical assistant, and escort driver – do not require crawling, according to the DOT and the VE (who confirmed that his testimony was consistent with the DOT except as to absenteeism). *See* DOT § 205.367-014, 1991 WL 671715; DOT § 209.587-010, 1991 WL 671797; DOT § 919.663-022, 1991 WL 687886.

Plaintiff relies on *Dial v. Commissioner of Social Security*, 403 F. App'x 420, 421 (11th Cir. 2010) (*see* doc. 27 at 41). In *Dial*, the Eleventh Circuit reversed the district court, finding it was not harmless error when the ALJ failed to include all of the claimant's employment limitations in the hypothetical question posed to the VE, because the ALJ relied exclusively on the VE's testimony and did not consider the DOT. 403 F. App'x at 421. But here, the VE testified that with the exception of absenteeism, his testimony was consistent with the DOT. (R. 72) Because the ALJ relied on both the VE's testimony and the DOT, this case is distinguishable from *Dial*. What is more, Plaintiff's RFC is for sedentary work (R. 28), which "involves sitting, [and] a certain amount of walking and standing is often necessary in carrying out job duties." 20 C.F.R. §§ 404.1567(a), 416.967(a). A person limited to sedentary work is implicitly precluded from crawling on the job. Under these circumstances, the ALJ did not commit reversible error in failing to pose a hypothetical question to the VE that included a limitation on crawling.

### 4. *SVP of two and three*

Plaintiff argues that "the Social Security Administration advised her that she could perform work which requires only a very short, on-the-job training period (Tr. 92, 111),

equating to SVP level 1 which requires a short demonstration only." (doc. 27 at 51). Because the jobs the ALJ identified for Plaintiff are SVP levels two and three, Plaintiff contends, remand is required. Plaintiff is incorrect. In support of her argument, she cites to the agency's denials at the initial and reconsideration stages of her application, which state Plaintiff is capable of a job that requires "only a very short, on-the-job training period." (R. 92, 111) Plaintiff cites no legal authority for her suggestion that the ALJ is bound by these earlier statements, and she does not cite to medical evidence supporting such a limitation.

Once Plaintiff appealed the agency's initial and reconsideration decisions, these statements were no longer binding on the agency; the ALJ is tasked with reviewing the entire record to determine if Plaintiff is disabled by a preponderance of the evidence. *See* 20 C.F.R. §§ 404.905, 416.1405 (agency's initial determination is binding unless claimant requests reconsideration); 20 C.F.R. §§ 404.921, 416.1421 (reconsideration decision is binding unless claimant requests an administrative hearing); 20 C.F.R. §§ 404.953, 416.1463 (ALJ must base his or her decision on a preponderance of the evidence offered at the hearing or otherwise included in the record). Plaintiff's argument is without merit.

### 5. *Right to counsel / duty to develop the record*

I discuss Plaintiff's next two arguments together: she argues the ALJ violated her statutory right to counsel and did not fully develop the record. The SSA extends individuals the statutory right, which may be waived, to be represented by counsel at an administrative hearing. *See Brown v. Shalala*, 43 F.3d 931, 934 (11th Cir. 1995); 42 U.S.C. §§ 406(a)(1), (c), 1383(d)(2)(A), (D); 20 C.F.R. §§ 404.1705, 416.1505. The ALJ also has a duty to notify a claimant, in writing, of her right to counsel before a hearing. *Smith v. Schweiker*, 677 F.2d 826, 828 (11th Cir. 1982). The deprivation of a statutory right to counsel at a Social Security

hearing is a statutory wrong, not a constitutional wrong.  *Holland v. Heckler*, 764 F.2d 1560, 1563 (11th Cir. 1985).

Relatedly, "[w]hen an unrepresented claimant unfamiliar with administrative hearing procedures appears before an ALJ, the ALJ is under an obligation to develop a full and fair record; *i.e.*, the record must disclose that there has been a full and fair hearing."  *Kelley v. Heckler*, 761 F.2d 1538, 1540 (11th Cir. 1985) (emphasis and citation omitted).  If the claimant did not validly waive the right to be represented, "the ALJ is under a 'special duty' to develop a full and fair hearing by conscientiously probing into all relevant facts."  *Id.*, n. 2 (citation omitted).  "This duty requires, essentially, a record which shows that the claimant was not prejudiced by the lack of [representation]."  *Id.* (quoting *Smith*, 677 F.2d at 829).  In examining whether a claimant was prejudiced by the lack of representation, a reviewing court must ensure the ALJ "scrupulously and conscientiously probe[d] into, inquire[d] of, and explore[d] for all the relevant facts."  *Brown*, 44 F.3d at 934-35 (quoting *Smith*, 677 F.2d at 829).

Conversely, if the claimant validly waived the right to be represented, the claimant must show "clear prejudice or unfairness" caused by the lack of representation to prove that she was denied a full and fair hearing.[7]  *Kelley*, 761 F.2d at 1540, n.2 (citation and quotation marks omitted).  Of particular importance is "whether the record reveals evidentiary gaps which result in unfairness or 'clear prejudice.'"  *Brown*, 44 F.3d at 935.  "Missing medical documentation or documentation of vocational services supporting a claim for disability can

---

[7]  The Eleventh Circuit has stated this about the two standards and their applications:  "These two standards appear to differ only in degree.  Both require that the ALJ fully develop the record.  Both require a showing of prejudice to necessitate a remand to the [Commissioner] for reconsideration.  The only discernable difference is that a more specific showing of prejudice is required if [a] claimant did not waive his [or her] right to [representation]."  *Kelley*, 761 F.2d at 1540 n.2.

be prejudicial," especially when it regards treatment "occurring near or during the period in which the claimant is eligible for disability insurance benefits." *Hart v. Saul*, No. 8:19-cv-938-J-JRK, 2021 WL 856242, at *5 (M.D. Fla. Mar. 8, 2021) (citing *Brown*, 44 F.3d at 935).

Here, Plaintiff appeared at the hearing without representation.  At the outset, the ALJ and Plaintiff had this exchange:

> ALJ:   You have a right to be represented by an attorney or non-attorney.  A representative can help you obtain information about your claim, explain medical terms, submit a request before me.  A representative may not charge a fee or collect a fee unless I approve what's called a fee agreement order.  However, you still may [be] responsible for some costs such as copying medical records or obtaining them.  Some legal service organizations offer legal representation free of charge, and you'd be responsible for obtaining that type of representation on your own.  You also have a right to proceed without a representative.  If you do so, I will obtain the relevant medical evidence that I need here today.  I will ask questions of you today, and also the witness, a vocational expert.  That aspect of the hearing is a more technical aspect of it.  I can explain to you the procedures, but it – there are a lot of terms of art, and that's the most I can is just explain to you the procedures, okay, because I'm not your representative.

> Plf:   That's fine.

> ALJ:   Otherwise, a representative can present evidence in a way that's most favorable to you.  So, do you want to proceed without a representative, or would you like an opportunity to find a representative and return at a later date?

> Plf:   No, no, I'll proceed.

> ALJ:   Okay.  So, I'm going to go ahead and go forward, and I'll have you sign a waiver of representation and two releases for any evidence that I do not have.  Oh, yeah, I have a waiver of representation.

(R. 48-49)  Based on this exchange, it appears Plaintiff had a signed waiver of representation form ready to present to the ALJ at the start of the hearing.

The waiver form advised Plaintiff of her right to have a representative appear at the hearing and her right to a full and fair hearing (whether represented or not). (R. 171)  The

form included an acknowledgement that Plaintiff received a list of legal aid organizations that may be able to represent her free of charge. (*Id*.)  Finally, the form had this bolded statement: "I hereby waive my right to representation at this Hearing and I choose to proceed without a representative." (*Id*.)  Plaintiff signed the form and dated it the same date as the hearing. (*Id*.) Additionally, the ALJ had informed Plaintiff in writing on December 15, 2017 (over three months before her March 28, 2018 hearing) that she had a right to appear at her hearing with a representative.  (R. 153-54)  Plaintiff acknowledged receipt of the ALJ's written notice of hearing on December 20, 2017. (R. 166)

Under these circumstances, I find that Plaintiff validly waived her statutory right to representation at her administrative hearing.  Plaintiff's exchange with the ALJ occurred before testimony began and shows the ALJ confirmed Plaintiff understood her right to be represented and was waiving it knowingly and voluntarily.  The ALJ informed Plaintiff of her options to obtain free representation, and she confirmed she understood these options and was rejecting them.  It appears Plaintiff had completed the wavier form before the ALJ explained her right to representation to her and had it ready to present to the ALJ at the start of the hearing.  And, Plaintiff obtained representation after the ALJ issued her decision, which evinces she understood her right to representation.[8]

Having established that Plaintiff's waiver of her right to representation was valid, the next issue is whether the ALJ fulfilled her duty to ensure Plaintiff received a full and fair

---

[8] It is the ALJ's task to assess a claimant's credibility.  *Mitchell v. Comm'r of Soc. Sec.*, 771 F.3d 780, 782 (11th Cir. 2014).  Plaintiff answered the ALJ's questions about her medical history and her limitations and, after the hearing, submitted additional medical records for the agency's review.  This evinces an ability to understand and follow instructions and bolsters the Commissioner's argument that Plaintiff knowingly and voluntarily waived her right to representation.

hearing.  In determining whether the ALJ abided this duty, courts consider whether the record reveals evidentiary gaps that result in unfairness or clear prejudice.  *Graham v. Apfel*, 129 F.3d 1420, 1423 (11th Cir. 1997); *Kelley*, 761 F.2d at 1540, n.2 (citation and quotation marks omitted).  But, as always, the claimant "bears the burden of proving [s]he is disabled, and, consequently, [s]he is responsible for producing evidence to support [her] claim." *Graham*, 129 F.3d at 1423.

Plaintiff highlights this exchange that occurred during the hearing, after the ALJ questioned the VE about two hypothetical scenarios:

ALJ: Thank you.  Ms. Hedges, you do have an opportunity to ask the vocational expert questions if you'd like.

Plf: I mean, like you said, I don't understand any of the numbers and things like that, but I – I don't understand what all that meant.  So, I mean, do I need to understand it.

VE: I just – the judge gave me a hypothetical, I gave her jobs that fit that hypothetical, --

Plf: Okay.

VE: With the – of course by the DOT codes, which don't mean anything to you …  It would mean something to the people who deal with it … So – and then, the second hypothetical -- … The hypothetical two ruled out all employment.

Plf: Okay.

VE: So, if the judge goes by hypothetical number one, there are jobs available for you.  If she goes by hypothetical number two, there are no jobs available.

Plf: Okay.

VE: And that will all depend on your medical records.

Plf: Okay.

22

(R. 73-74)  According to Plaintiff, the ALJ should have suspended the hearing at this point so Plaintiff could obtain counsel or, at the very least, should have interjected and explained the VE's comments (doc. 27 at 54-55).  Instead, the ALJ explained to Plaintiff that she plans to obtain updated medical records from 2017 and 2018 before issuing her written decision. Plaintiff argues this was clear prejudice that can only be remedied by a remand.

I disagree.  Although Plaintiff posits that her counsel (if she had had one at the administrative hearing) would have more thoroughly questioned the VE, this is speculative. And, before Plaintiff validly waived her right to counsel at the beginning of the hearing, the ALJ informed her the hearing would include VE testimony regarding technical "terms of art." (R. 49)  Plaintiff does not convincingly argue she misunderstood this initial explanation by the ALJ (as discussed above).  Although the ALJ could have interjected during Plaintiff's faltering exchange with the VE, there is no clear prejudice related to the ALJ's decision to not do so.

This dovetails into Plaintiff's argument that the ALJ's failure to obtain the updated medical records from her primary care doctor and her podiatrist -- records the ALJ mentioned during the hearing were vital to the Commissioner's decision -- created an evidentiary gap that resulted in clear prejudice.  In other words – Plaintiff's argument goes – even if she validly waived her right to representation, the ALJ did not fulfill her duty to conduct a full and fair hearing because the record is incomplete.

I disagree with Plaintiff on this point as well.  The ALJ considered the entire record in issuing her decision, while acknowledging that podiatrist Arlo Yaege, D.P.M. of Port Charlotte Foot and Ankle Clinic treated Plaintiff during the relevant time, and his treatment notes are not in the record. (R. 34)  Plaintiff and the ALJ discussed Dr. Yaege's records at the

23

hearing.  The ALJ asked, "And then, how about Dr. Jaeger [phonetic], podiatry, do I have to get those records?" (R. 51)  Plaintiff confirmed she had seen Dr. Yaege (referred to in the hearing transcript as Dr. Jaeger) since December 2016, when the ALJ received the last medical records update.  The ALJ responded, "So, I have to get those records." (R. 52)  The ALJ proceeded to question Plaintiff about her foot and ankle issues (she has severe bunions), for which she was treated by two podiatrists, Dr. Yaege being the most recent.  Plaintiff explained that the doctor showed her "how to take care of my feet so I'm not in there every couple of weeks." (R. 60)  She sees Dr. Yaege every six months to "take new X-rays, make sure it's not causing my ankle to turn.  I guess he's worried about that over time." (*Id.*)

Regarding Dr. Gagliardi, Plaintiff indicated the ALJ had "most of her information" except for her December 2017 record, when the doctor referred Plaintiff to a rheumatologist. (R. 51)  As the hearing concluded, the ALJ reminded Plaintiff that "even though you thought we had a lot of evidence, I don't have updates.  I may have some of it, but I don't have all of it . . . from 2017 and 2018." (R. 74)  So, the ALJ sent records requests to Dr. Yaege twice in April 2018, to the address Plaintiff provided. (R. 272, 276, 1109-112)  The post office returned both requests as undeliverable. (R. 1109, 1115)  The ALJ also mailed Dr. Gagliardi's office a request for updated records in May 2018, using two addresses (at least one of which matched the address Plaintiff provided), which was undeliverable.[9] (R. 272, 276, 1117-119)

Although Plaintiff retained counsel in October 2018, her counsel did not submit updated treatment notes from Drs. Gagliardi and Yaege, although she did submit updated records from Englewood EMT, which the AC incorporated into the record. (R. 1-16)  Despite

---

[9]  Dr. Gagliardi's treatment notes from 2013 through 2016 are in the record. (R. 574-645)  His office address is not listed on these earlier records, and the cover letter from the agency listing his address is faded and illegible. (R. 642)

not having Drs. Gagliardi and Yaege's updated records, the ALJ discussed Dr. Gagliardi's 2015 and 2016 treatment of Plaintiff for bilateral knee and shoulder pain and neck pain resulting from her 2015 car accident (which occurred shortly before her hernia surgery) and for a deviated septum, migraines, and vertigo. (R. 30)  Dr. Gagliardi referred her to an ENT specialist (for her deviated septum), a neurologist (for vertigo and migraines) and a pain management doctor.  The ALJ also discussed Plaintiff's treatment with podiatrist Patrick Chernesky, who treated Plaintiff for severe bunions until his retirement in late 2016. (R. 30, 33-34, 794-808, 868-70)

Against this factual backdrop – where the ALJ tried multiple times to contact Plaintiff's treating physicians at addresses Plaintiff provided, and Plaintiff also had the opportunity to supplement the record with these treatment notes but did not – I do not find that the ALJ failed to fully develop the record.  *See Graham*, 129 F.3d at 1423 (claimant "bears the burden of proving [s]he is disabled, and, consequently, [s]he is responsible for producing evidence to support [her] claim.").  Plaintiff points to no clear prejudice related to the ALJ's inability to obtain updated treatment notes from Drs. Gagliardi and Yaege.  Plaintiff's argument fails.

### 6.  *Constitutionally appointed ALJ*

Finally, Plaintiff contends the ALJ was not properly appointed and lacked authority to decide his case.  This argument fails.  *See generally Lucia v. S.E.C.*, __ U.S. __, 138 S.Ct. 2044 (2018) (holding petitioner raised "timely" challenge to appointment of ALJ who heard his case because he first raised issue during administrative proceedings before SEC); *Sims v. Apfel*, 530 U.S. 103, 108 (2000).  As the Commissioner notes, Plaintiff should have raised this complaint earlier.  By failing to do so, Plaintiff waived the issue.  *See* doc. 27 at 63-74; *see also*

*United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 38 (1952) (holding that parties may not wait until court to raise a statutory "defect in the … appointment" of the official who issued agency's initial decision); *Elgin v. Dep't of Treasury,* 567 U.S. 1, 23 (2012) (plaintiff required to exhaust constitutional claim to administrative agency before seeking review in federal court).

Relying on *Sims v. Apfel,* U.S. 103 (2000), Plaintiff reasons that her Appointments Clause challenge is timely.  Another judge in this district has rejected this argument, and I agree. *See Miaolino v. Comm'r of Soc. Sec*, Case No. 2:18-cv-494-FtM-UAM, 2019 WL 2724020 (M.D. Fla. July 1, 2019).  In *Miaolino*, the judge explained that "*Sims* concerned only whether a claimant must present all relevant issues *to the Appeals Council* to preserve them for judicial review; the [Supreme] Court specifically noted that '[w]hether a claimant must exhaust issues before the ALJ is not before us.'"  *Id.*, citing *Shaibi v. Berryhill*, 883 F.3d 1102, 1109 (9th Cir. 2017) (quoting *Sims*, 530 U.S. at 107).  Because the issue is whether Plaintiff's challenge – presented to this Court for the first time – is timely, *Sims* is inapposite.

The Supreme Court in *Lucia* did not make a blanket finding that all ALJs are subject to the Appointments Clause, just that SEC ALJ**s** are so subject. At the time the Supreme Court decided *Lucia*, the SEC had only five ALJs. *Lucia*, 138 S.Ct. at 2049.  In contrast, there are currently over 1,700 Social Security Administration ALJs. *See Miaolino,* 2019 WL 2724020, at *7, citing ALJ Disposition Data for Fiscal Year 2019, *available at* https://www.ssa.gov/appeals/DataSets/03_ALJ_Disposition_Data.html. This is more ALJs than all other federal agencies combined.  *See* SSR 19-1p, 84 Fed. Reg. 9582-02 (Mar.

15, 2019). [10]   The Social Security Administration annually receives about 2.6 million initial disability claims and completes about 689,500 ALJ hearings; in 2018, it took an average 809 days to process a claim from its initial receipt to an ALJ decision, with more than 850,000 people waiting for ALJ hearings.  *See* SSA's Annual Performance Report, Fiscal Years 2018-2020, at 4, 42, 46 (2019).

"If the courts were to apply *Lucia* to Social Security cases as Plaintiff argues this Court should, millions of cases would need be remanded for rehearing by a different ALJ. Given these important efficiency concerns and the Supreme Court's specific findings in *Lucia*, the Court is skeptical that *Lucia* is even controlling as to Social Security Administration ALJs." *Miaolino*, at *7.  What is more, as the Commissioner points out, most courts faced with this issue have declined to extend *Lucia* so far.  This includes my Order affirming the ALJ's decision denying benefits in *Heubert v. Commissioner of Social Security*, Case No. 2:18-cv-781-FtM-MAP, 2019 WL 5206065 (M.D. Fla. Oct. 16, 2019).

D.   *Conclusion*

For the reasons stated above, it is ORDERED:

(1)  The Commissioner's decision is AFFIRMED.

(2)  The Clerk of Court is directed to enter judgment for the Commissioner and close the case.

---

[10] On March 15, 2019, the Commissioner published Social Security Ruling 19-1p, Titles II and XVI:  Effect of the Decision in *Lucia v. Securities and Exchange Commissioner* (SEC) on Cases Pending at the Appeals Council.  84 Fed. Reg. 9582-02 (Mar. 15, 2019).  The ruling explains that when claimants have raised timely Appointments Clause challenges by presenting that claim either to the ALJ or to the Appeals Council, the agency shall provide for additional administrative review of their claims, as required by *Lucia*.

DONE and ORDERED in Tampa, Florida on March 30, 2021.

_Mark A. Pizzo_

MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE